**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LACEY MAJORIE** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:22-CV-5258** |
| **SECURE PATIENT DELIVERY, LLC, SECURE PATIENT DELIVERY SHUTTLE, LLC, and ROTEM DAHAN** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Lacey Majorie asserts her causes of action against defendants Secure Patient Delivery, LLC; Secure Patient Delivery Shuttle, LLC; and Rotem Dahan as follows:

### THE PARTIES

1.      Plaintiff is Lacey Majorie.  Ms. Majorie is 38 years old.  She is a Louisiana citizen.  She resides in St. Tammany Parish.

2.      Defendant is Secure Patient Delivery, LLC (hereinafter "**SPD**").  SPD is a Louisiana limited liability company organized and headquartered in Jefferson Parish, Louisiana.  At the time this lawsuit was filed, SPD appeared to have one member, Belinda Dahan, and one manager, Rotem Dahan (it is not clear whether Rotem Dahan is a member or not at the time of filing).  To the best of Ms. Majorie's understanding, Belinda and Rotem are married to each other.  Both Belinda and Rotem Dahan are Louisiana citizens who reside in Jefferson Parish.

3.      Defendant is Secure Patient Deliver Shuttle, LLC (hereinafter "**SPD Shuttle**").  SPD Shuttle is a Louisiana limited liability company organized and headquartered in Jefferson Parish, Louisiana.  At the time this lawsuit was filed, SPD Shuttle appeared to have one member, Belinda Dahan, and one manager, Rotem Dahan (it is not clear whether Rotem Dahan is a member or not

at the time of filing).  Both Belinda and Rotem Dahan are Louisiana citizens who reside in Jefferson Parish.

4.      At the time this lawsuit was filed, the registered agent for service of process for both SPD and SPD Shuttle is Rotem Dahan.

5.      Defendant is Rotem Dahan.  Dahan is past the age of majority.  He is a Louisiana citizen and, upon information and belief, resides in Jefferson Parish.

## JURISDICTION AND VENUE

6.      The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2000e-2 *et seq.* (Title VII); 28 U.S.C. § 2000e-3 *et seq.* (Title VII's anti-retaliation provision); 42 U.S.C. § 1981 (race-based discrimination in employment); 29 U.S.C. § 2617 *et seq.* (the FMLA); and 31 U.S.C. § 3730 *et seq.* (the False Claims Act) as more particularly set-out herein.

7.      The Court has supplemental, subject-matter jurisdiction over Ms. Majorie's state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her federal law claims that they form part of the same case or controversy as more particularly set-out herein.

8.      The Court has personal jurisdiction over Secure Patient Delivery, LLC because it is a limited liability company registered and actively doing business in Louisiana and, through its registered agent for the service of process, Rotem Dahan, is present within Louisiana at the time this suit commenced.

9.      Alternatively, the Court has personal jurisdiction over Secure Patient Delivery, LLC because, upon information and belief, it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed unlawful employment acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services it provides in

Louisiana. Thus, Secure Patient Delivery, LLC has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

10.     The Court has personal jurisdiction over Secure Patient Delivery Shuttle, LLC because it is a limited liability company registered and actively doing business in Louisiana and, through its registered agent for the service of process, Rotem Dahan, is present within Louisiana at the time this suit commenced.

11.     Alternatively, the Court has personal jurisdiction over Secure Patient Delivery Shuttle, LLC because, upon information and belief, it regularly transacts business in Louisiana and regularly employs Louisiana citizens, committed unlawful employment acts within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services it provides in Louisiana. Thus, Secure Patient Delivery Shuttle, LLC has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

12.     The Court has personal jurisdiction over Rotem Dahan because he is a Louisiana citizen, and because he was presumably present within Louisiana at the time this lawsuit commenced.

13.     Venue for Ms. Majorie's Title VII claims is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) because (1) the unlawful employment practice alleged herein was committed within this judicial forum (specifically, Jefferson Parish), (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, Jefferson Parish), and (3) but for the unlawful employment practice, Ms. Majorie would have been employed in this district (specifically, Jefferson Parish).

14.     Venue for Ms. Majorie's remaining federal and state-law claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct alleged occurred in this judicial forum (Jefferson Parish) and Ms. Majorie suffered her injuries and damages in this judicial forum (Jefferson Parish).

## PROCEDURAL AND STATUTORY REQUIREMENTS

15.     SPD and SPD Shuttle hired Ms. Majorie around January 8, 2018.

16.     SPD and SPD Shuttle terminated Ms. Majorie's employment around February 11, 2022.

**A.     Allegations Related to Plaintiff's FMLA Claims**

17.     Based on publicly available "Paycheck Protection Program" data sourced from the U.S. Small Business Administration, along with Ms. Majorie's eyewitness estimates, SPD employed between 53 and 69 employees each working day in at least twenty or more calendar weeks in 2022 and 2021.

18.     Many of SPD's employees are drivers who do not physically work at any one fixed location.

19.     At the time Ms. Majorie requested FMLA leave in January 2022, at least 50 of SPD's employees reported to or received their work assignments and instructions from SPD and SPD Shuttle's shared headquarters in Metairie, Louisiana such that those employees' home base was the company headquarters.

20.     Additionally or alternatively, at the time Ms. Majorie requested FMLA leave in January 2022, at least 50 of SPD's employees worked at worksites within 75 miles of SPD's headquarters located in Metairie, Louisiana.

21.     Based on publicly available "Paycheck Protection Program" data sourced from the U.S. Small Business Administration, along with Ms. Majorie's eyewitness estimates, SPD Shuttle

employed at least 53 employees each working day in at least twenty or more calendar weeks in 2022 and 2021.

22.     Many of SPD Shuttle's employees are drivers who do not physically work at any one fixed location.

23.     At the time Ms. Majorie requested FMLA leave in January 2022, at least 50 of SPD Shuttle's employees reported to or received their work assignments and instructions from SPD and SPD Shuttle's shared headquarters in Metairie, Louisiana such that those employees' home base was the company headquarters.

24.     Additionally or alternatively, at the time Ms. Majorie requested FMLA leave in January 2022, at least 50 of SPD Shuttle's employees worked at worksites within 75 miles of SPD's headquarters located in Metairie, Louisiana.

25.     Additionally, as alleged throughout this complaint, at the time Ms. Majorie requested FMLA leave in January 2022, she was a joint employee of both SPD and SPD Shuttle.  For at least one year prior to her request for FMLA leave in January 2022, Ms. Majorie received half of her pay from SPD and the other half from SPD Shuttle.  Ms. Majorie reported to Rotem Dahan, the owner of both SPD and SPD Shuttle.  Ms. Majorie performed work for both companies.  Ms. Majorie worked at SPD and SPD Shuttle's shared headquarters in Metairie, Louisiana. Accordingly, for purposes of the FMLA, SPD and SPD Shuttle's individual employees are aggregated for the purposes of determining their obligations to Ms. Majorie.  When aggregated, SPD and SPD Shuttle employed at least 50 or more employees each week for at least 20 continuous weeks in 2022 or 2021.  When aggregated, at the time Ms. Majorie requested FMLA leave in January 2022, to the best of her recollection, SPD and SPD Shuttle employed at least 50 employees who worked within 75 miles of the companies' joint Metairie headquarters.

26.     Additionally or alternatively, as alleged throughout this complaint, SPD and SPD Shuttle were a single, integrated employer.  At the time Ms. Majorie requested FMLA leave in January 2022, Rotem Dahan was the sole owner of both companies.  Both companies shared their corporate headquarters, resources, and employees.  Both companies advertised through one website without apparently distinguishing one from the other.  Both companies were managed by the same small group of key managers, and there was no practical distinction in terms of management between SPD and SPD Shuttle.  Accordingly, for purposes of the FMLA, SPD and SPD Shuttle's individual employees are aggregated for the purposes of determining their obligations to Ms. Majorie.  When aggregated, SPD and SPD Shuttle employed at least 50 or more employees each week for at least 20 continuous weeks in 2022 or 2021.  When aggregated, at the time Ms. Majorie requested FMLA leave in January 2022, to the best of her recollection, SPD and SPD Shuttle employed at least 50 employees who worked within 75 miles of the companies' joint Metairie headquarters.

27.     At the time Ms. Majorie requested FMLA leave in January 2022, she had worked for SPD and SPD Shuttle for longer than 12 months.

28.     At the time Ms. Majorie requested FMLA leave in January 2022, she had worked more than 1,250 hours for SPD and SPD Shuttle in the preceding 12 months.

29.     As alleged throughout this complaint, at the time Ms. Majorie requested and received FMLA leave in January 2022, she suffered a serious health condition related to stress, anxiety, and panic attacks; had treated with a physician in January 2022; had been diagnosed as suffering work-related panic attacks; had been prescribed a course of treatment, specifically fluoxetine and Xanax to help manage her symptoms; and could not work because of her health, illnesses, and symptoms. This serious health condition prevented Ms. Majorie from working from the time she took approved FMLA medical leave in January 2022 until she was terminated in February 2022.

30.     At the time of her termination, Ms. Majorie was on FMLA medical leave previously approved by management.

**B.     Allegations Related to Plaintiff's Title VII, LEDL, and Remaining Claims**

31.     On March 20, 2022, Ms. Majorie sent correspondence through her attorney to Rotem Dahan, SPD, and SPD Shuttle putting them on notice that Ms. Majorie opposed her wrongful termination under the FMLA; Title VII and related Louisiana discrimination law; the Federal False Claims Act and related Louisiana whistleblower law; and La. Rev. Stat. Ann. § 23:623 *et seq.* (the Louisana Wage Payment Act).  Ms. Majorie offered an amicable resolution of the dispute.  Ms. Majorie also demanded that SPD, SPD Shuttle, and its owners and employees begin preserving all evidence related to her claims in anticipation of litigation.

32.     On August 4, 2022, within 300 days of her unlawful termination, Ms. Majorie through counsel timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office alleging SPD and SPD Shuttle unlawfully terminated Ms. Majorie based on her race, sex, religion, and national origin, and in retaliation for making protected complaints about workplace discrimination, in violation of Title VII (EEOC Charge No. 461-2022-02473).

33.     On September 14, 2022, the EEOC issued Ms. Majorie a Notice of Right to Sue in this matter.

34.     Ms. Majorie timely filed this federal lawsuit within 90 days of receiving the EEOC's Notice of Right to Sue letter.

35.     In this case, Ms. Majorie alleges she was terminated because of (or, solely with respect to her Title VII claims, motivated by) her sex (woman); race (white, not ethnically Jewish);[1] religion

---

[1]  Plaintiff does not purport to be an expert on Jewish religion, faith, or ethnicity, and does not intend to convey any political, social, or religious viewpoint on these matters in this lawsuit.  Rather, as alleged throughout this complaint, Rotem Dahan himself expressed viewpoints preferring workers whom he perceived to be both from Israel and ethnically Jewish as compared to workers not from Israel or not

(Christian, not religiously Jewish); and national origin (United States, not from Israel).

36.     Ms. Majorie also alleges she was terminated because she took approved FMLA leave and for the purpose of interfering with her right to continue her protected FMLA leave.

37.     Ms. Majorie also alleges she was terminated because she participated in an ongoing investigation by the Louisiana Attorney General's Office into whether SPD, SPD Shuttle, or its decision-makers engaged in Medicaid fraud.

38.     Ms. Majorie also alleges defendants falsely accused her of company theft in retaliation against her because she complained her termination was unlawful under the FMLA, Title VII, the LEDL, the federal False Claims Act, and the Louisiana Medical Assistance Programs Integrity Law.

39.     Ms. Majorie also alleges defendants falsely accused her of company theft because of her race, sex, religion, and national origin.

40.     Ms. Majorie also alleges defendants owe her unpaid wages and compensation after her termination under the Louisiana Wage Payment Act.

## FACTS

### A.     The Plaintiff – Lacey Majorie

41.     Lacey Majorie is married and has two, minor children.  She lives with her husband and children in St. Tammany Parish.  Her family depends, in part, on Ms. Majorie's income to support

---

ethnically Jewish.  To the extent Ms. Majorie's claim for race discrimination under 42 U.S.C. § 1981 requires a showing that Jewishness, when used as a description of a person's ethnicity, includes at least some physical or genealogical traits of "shared ancestry or ethnic characteristics," *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987), plaintiff alleges that Jewish ethnicity, in that context, fits the description, and that Dahan routinely referred to Jewish people in both a religious and ethnic context. Likewise, at least one federal court has considered the issue and held that ethnic Jewishness is a protected race under Section 1981.  *Domanic v. Christian Bros. Auto. Corp.*, CV H-22-386, 2022 WL 2788885 at *1 (S.D. Tex. July 15, 2022) ("As an ethnic Jew, [plaintiff] is a member of a protected racial minority group within the meaning of Section 1981").

themselves.

42.     Ms. Majorie has a Bachelor of Science degree in accounting.

43.     Ms. Majorie is a white woman.  She was born in the United States.  She is a Christian.

**B.      The Company Defendants – SPD and SPD Shuttle**

44.     Secure Patient Delivery, LLC ("SPD") and Secure Patient Delivery Shuttle, LLC ("SPD Shuttle") are Louisiana businesses that provide medical transportation services for patients for a fee. SPD focuses on transporting behavioral-health patients. SPD Shuttle focuses on transporting non-behavioral-health patients.  SPD and SPD Shuttle contract with Medicaid (among others) for these services and receives payment from Medicaid in return.

45.     As alleged throughout this lawsuit, SPD and SPD Shuttle constitute Ms. Majorie's single, integrated employer based on the facts of the matter.

46.     At the very least, as alleged throughout this lawsuit, SPD and SPD Shuttle were Ms. Majorie's joint employers based on the facts of the matter.

47.     According to their most recent annual reports filed with the Louisiana Secretary of State in 2022, along with Ms. Majorie's knowledge of the matter, both SPD and SPD Shuttle maintain the same business headquarters located in Metairie, Louisiana.

48.     According to filings from both companies with the Louisiana Secretary of State, along with Ms. Majorie's knowledge of the matter, both companies have had identical members, business headquarters, and registered agents since February 2016.

49.     According to filings from both companies with the Louisiana Secretary of State, along with Ms. Majorie's understanding of the matter, Rotem Dahan became the sole owner of both SPD and SPD Shuttle in 2020.

50.     Finally, according to filings from both companies with the Louisiana Secretary of State,

Dahan appears to have made his wife, Belinda Dahan, a member of both companies, and Dahan has named himself manager of both entities.

51.     Based on Ms. Majorie's understanding of SPD and SPD Shuttle and the available evidence, plaintiff alleges that SPD and SPD Shuttle are a single, integrated enterprise.  At all times relevant to this case as alleged throughout this lawsuit, Dahan was the chief-executive and decision maker for both SPD and SPD Shuttle.   The companies shared resources.   The companies shared employees.  The companies shared a website for advertising that did not apparently distinguish the two entities from each other.  The companies, at times, each paid a share of various employee's wages, including Ms. Majorie's.  The companies shared a commonality of interests.  There was no clear distinction between the companies in their day-to-day management.   For all practical purposes, SPD and SPD Shuttle operated as one company.

**C.     The Defendant – Rotem Dahan**

52.     Rotem Dahan is a man.  He was born in Israel and immigrated to the United States at the age of 19 or 20.  To the best of Ms. Majorie's understanding, Dahan identifies as both religiously and ethnically Jewish.

53.     Dahan professes to own many different businesses and real estate ventures including SPD and SPD Shuttle.

54.     Dahan maintains a public, social media account on TikTok.com found at https://www.tiktok.com/@ro.dahan

55.     Dahan maintains a public, social media account on Facebook.com found at https://www.facebook.com/DahanEnterprisesLLC

56.     Dahan maintains a website advertising something akin to his own personal "brand" along with purported mentoring and business coaching found at https://www.rodahan.com/

57.     Dahan frequently creates new content for his social media profiles.  The gist of the content is Dahan's professed strategies and feelings about what it takes to be a successful businessperson.

58.     In his online content, Dahan indicates his Jewish identity are important components of his business success.

59.     For instance, on Dahan's personal website, Dahan sells mentoring services to prospective clients including "10 pathways to success based on Judaism and Jewish mysticism."

60.     Dahan describes his business ethos on his public TikTok page as "Success through Judaism."

61.     Nevertheless, as described in the remainder of this lawsuit, Ms. Majorie alleges Dahan holds animus against his employees who are not from Israel, who are not religiously Jewish, and who are not ethnically Jewish.

62.     As described in the remainder of this lawsuit, Ms. Majorie alleges Dahan holds animus against his employees who are women.

63.     As described in the remainder of this lawsuit, Ms. Majorie alleges Dahan strongly favors employees who are men, who are from Israel, and who are ethnically or religiously Jewish.

**D.      Ms. Majorie's Career at SPD**

64.     SPD originally hired Ms. Majorie around January 8, 2018 as the company's Controller.

65.     At the time of her termination, Ms. Majorie earned a base salary of $75,000 per year plus bonus and fringe benefits.

66.     One benefit was four weeks of paid vacation every year, usable in hourly increments, which accrued and was earned by Ms. Majorie on the first day of January every year.

67.     At the time of Ms. Majorie's termination in February 2022, she had accrued 664 hours of earned, but unused, paid vacation leave.

68.     Another benefit was paid FMLA leave, and that paid leave did not deduct from Ms. Majorie's separate bank of paid vacation leave.

69.     Ms. Majorie was also issued a company credit card and was authorized to use the credit card to make any purchases she deemed appropriate and necessary for the company.

70.     When Ms. Majorie first began working for SPD and SPD Shuttle in 2018, the companies each had three owners: Dahan, a man named Salvador Monfra, and a man named Timothy ("Tim") Legendre.

71.     Mr. Monfra is a white man.  He was not born in Israel.  To the best of Ms. Majorie's understanding, he is not religiously or ethnically Jewish.

72.     Mr. Legendre is a white man.  He was not born in Israel.  To the best of Ms. Majorie's understanding, he is not religiously or ethnically Jewish.

73.     Later, in 2020, Dahan bought out Monfra and Legendre's ownership interests in the company.

74.     Before Dahan became the sole owner of SPD and SPD Shuttle, he expressed views and engaged in conduct that were harassing and discriminatory based on sex, religion, race, and national origin.

75.     After Dahan became the sole owner of SPD and SPD Shuttle, his harassment and discrimination markedly increased.

76.     After Dahan became sole owner of SPD and SPD Shuttle in 2020, he frequently made comments to Ms. Majorie and others that he could do and say whatever he liked because he owned the companies.

77.     The following are examples of Dahan's statements and conduct that evince his animus against women and those he perceived as not ethnically or religiously Jewish in the workplace,

including Ms. Majorie:

- At some point shortly after Dahan became sole owner, Ms. Majorie urged him not to fire an employee solely because he discussed his salary with another employee.  Dahan called Ms. Majorie a "pussy."

- At some point in 2021, Ms. Majorie recommended against one of Dahan's business decisions.  Dahan told Ms. Majorie to "stop being a pussy."  Ms. Majorie has never heard Dahan say something like that to a male subordinate.

- On another occasion, Ms. Majorie heard Dahan tell a female co-worker that she needed to have "balls" at work.  Ms. Majorie has never heard Dahan say something similar to a male subordinate.

- Throughout her entire employment, Dahan regularly told Ms. Majorie she did not know how to do her job because she was "not a business person," that Ms. Majorie didn't "have a brain," and so on and so forth.  In context, Ms. Majorie understood Dahan meant she was stupid because she is a woman.  Ms. Majorie has never heard Dahan speak like this to any of his male subordinates.

- Dahan often told Ms. Majorie he believed men made better business executives than women.

- In 2021, Dahan interviewed one woman and one man for a management position assigned to his related Florida and Texas transportation businesses.  Ms. Majorie sat in the interviews.  The woman was clearly, objectively better qualified than the man.  The man was clearly, objectively unqualified for the job regardless of comparison.  Ms. Majorie recommended Dahan hire the only qualified candidate – the woman.  Dahan hired the unqualified man instead, because, Dahan told Ms. Majorie, men were "stronger" and

"better organized" than women.  The man Dahan hired quit about three months later.
Dahan refused to contact the female candidate for the job.

- A while later, Dahan did hire two women for management positions at his related,
transportation businesses in Florida.  Both resigned a short time later.  In response, Dahan
told Ms. Majorie that, from then on, he was only going to hire Jewish men for leadership
positions because, Dahan said, Jewish people were God's "chosen people" and made the
best workers.  In context, contrasted with non-Jewish people, Dahan told Ms. Majorie
Jewish people are "more structured," "more business oriented," and that they "have goals
and go after them."

- In that same conversation, Dahan told Ms. Majorie that everyone else (meaning, people
who are not ethnically or religiously Jewish) were "jealous" and "greedy."  Dahan knew
that Ms. Majorie was Christian.  In context, Ms. Majorie understood Dahan to demean her
because she was not Jewish, and that Ms. Majorie was a "jealous" and "greedy" person
because of her religion and ethnicity.

- Dahan's comment that others are "jealous" of Jewish people tracks with very recent
comments Dahan made on his public TikTok profile on November 24, 2022.  There, Dahan
explained:

> "If you're gonna mock, lets say, the Muslim religion, you will see them basically
> burning down buildings, going and riot, you saw it in Europe before. As a Jewish
> person, we get mocked all the time, you see people mocking you, mocking Moses,
> going down the mountain, you see people mocking us on our big noses, we don't
> burn down stuff. You know what we do? We go buy the buildings, we go change
> the zoning, and we go sell it for five times the value. That's why everybody's
> jealous.[2]

- After he purchased SPD and SPD Shuttle in 2020, Dahan told Ms. Majorie and others that

---

[2]  This video may be viewed at https://www.tiktok.com/@ro.dahan/video/7169623281853566250

(to the best of her recollection) "if I could I'd fire all of you and replace you with Jews from Israel."

- Dahan once told Ms. Majorie he did not want to do business with a Jewish person in Florida because he was a "European Jew" (in context, as opposed to a Jewish person from Israel).

- Dahan told Ms. Majorie he recently fired a Palestinian worker of one of his unrelated companies specifically because he was Palestinian, saying "I let him go because he's Palestinian."

- Around May 2019, before he became sole owner, Dahan wanted to hire a new human resources manager for SPD and SPD Shuttle.  He told Ms. Majorie and Mr. Monfra to hire an Israeli, Jewish woman that Dahan had met as his local synagogue.  Ms. Majorie and Mr. Monfra interviewed the candidate.  They learned the candidate had no experience in human resources and was not, apparently, conversationally fluent in English.  Ms. Majorie and Mr. Monfra reported back to Dahan that the candidate was not qualified to be SPD and SPD Shuttle's human resources manager.  Dahan was angry about the matter.

- Dahan regularly engaged Ms. Majorie and his other employees in religious conversations.  During Christmas time one year, Dahan told Ms. Majorie she (meaning, in context, Christians) "worshiped trees and pagans."

- Dahan has previously told Ms. Majorie and others in the workplace that the "Christian Bible is wrong."

- The Christmas after he became the sole owner of SPD and SPD Shuttle, Dahan told office workers they could not have Christmas decorations at the office.  But Dahan conspicuously placed Hannukah decorations at SPD and SPD Shuttle's headquarters.  Dahan eventually allowed his workers to place a Christmas tree in the office after his staff complained.

78.     In early 2021, one of Dahan's managers in Florida resigned, and Dahan assigned Ms. Majorie as his "Vice President of Operations" for SPD, SPD Shuttle, and Dahan's related transportation companies in Florida and Texas.

79.     Dahan did not give Ms. Majorie any pay raise for her increased responsibilities.

80.     Dahan told Ms. Majorie he believed his clients and customers preferred to interact with a "Vice President of Operations," and that is why he gave Ms. Majorie the new title.

81.     As the new Vice President, Ms. Majorie was required to fly and drive between Texas, Florida, and Louisiana on various work assignments for Dahan and his companies.

82.     Ms. Majorie was also required to continue serving as SPD and SPD Shuttle's Controller.

**E.     Ms. Majorie Participates in a Louisiana Attorney General Investigation into Alleged or Suspected Medicaid Fraud**

83.     In July 2021, Ms. Majorie met with investigators from the Louisiana Attorney General Office's "Medicaid Fraud Control Unit."   Those investigators interviewed Ms. Majorie about SPD's business activities related to its Medicaid contracts and, as Ms. Majorie understood it, alleged or suspected Medicaid fraud.  Ms. Majorie voluntarily participated in the interview and told the investigators what she knew.  The investigators asked Ms. Majorie if she would agree to testify about, among other things, business actions taken by Tim Legendre back when he was employed by SPD (before he sold his ownership interest to Dahan in 2020).

84.     Ms. Majorie agreed to testify if asked to do so.

85.     After her meeting with the investigators, Ms. Majorie told Dahan and Mr. Monfra about the meeting, the alleged or suspected Medicaid fraud, and her agreement to testify if asked.

**F.     Dahan Terminates Ms. Majorie**

86.     Several months later, on January 4, 2022, Dahan informed Mr. Majorie that he had re-hired (either as an employee or a contractor) Tim Legendre as SPD's new Chief Financial Officer, and

Dahan told Ms. Majorie she would begin directly reporting to Legendre. Dahan knew that Ms. Majorie had previously agreed to testify against Mr. Legendre as part of the Louisiana Attorney General office's Medicaid investigation if asked.

87.    Dahan's decision to re-hire Mr. Legendre under these circumstances was inexplicable.

88.    Dahan's decision to re-hire Legendre and assign him as Ms. Majorie's manager caused her extraordinary stress.

89.    The next day, on January 5, Sal Monfra told Ms. Majorie she looked very sick at work. Ms. Majorie told Monfra she felt great stress about Dahan's decision to re-hire Legendre.

90.    Mr. Monfra told Ms. Majorie she should take a medical leave of absence, and so she took approved sick leave for the next few days.

91.    A few days later, Mr. Monfra called Ms. Majorie again and told her to request an FMLA medical leave of absence.

92.    Around the same time, on January 11, 2022, Ms. Majorie treated with Dr. Richard Long, D.O. in Mandeville, Louisiana.

93.    To the best of her understanding, Dr. Long diagnosed Ms. Majorie with panic attacks caused by work stress and prescribed her a course of treatment – fluoxetine and Xanax for her anxiety.

94.    At the time, Ms. Majorie was unable to work because of her stress, anxiety, and panic attacks.

95.    On January 12, 2022, Ms. Majorie sent an email to Mr. Monfra requesting a medical leave of absence because of her mental and physical health.

96.    To the best of Ms. Majorie's understanding, Mr. Monfra authorized the leave under the FMLA, and Mr. Monfra was authorized under SPD policy to do so.

97.     Under SPD policy at the time, Ms. Majorie was entitled to have her protected, FMLA leave be paid at her regular salary.

98.     Shortly after Ms. Majorie began her FMLA leave, Mr. Monfra called her and reported Dahan was very angry she had taken approved "FMLA" leave.  Mr. Monfra reported Dahan said Ms. Majorie was "being paid to sit at home" and Dahan said he wanted to terminate Ms. Majorie because of her paid leave.  Mr. Monfra reported Dahan specifically said he was angry Ms. Majorie was on "FMLA" leave.

99.     Based on her interactions with Dahan, Ms. Majorie alleges he was not only angry that Ms. Majorie was on paid FMLA leave, but viewed Ms. Majorie as "greedy," "jealous," and "paid to sit at home" because she was a white, American, Christian woman (in other words, not a man, not religiously or ethnically Jewish, and not from Israel).

100.    Ms. Majorie alleges Dahan would not have wanted to fire her while on protected FMLA if Majorie was a man, or Israeli, or ethnically or religiously Jewish.

101.    Shortly thereafter, Mr. Monfra met with Legendre and Dahan concerning Ms. Majorie's FMLA leave.  Monfra later recounted the details of the meeting to Ms. Majorie.  Dahan apparently believed he could not lawfully terminate Ms. Majorie while she was on protected FMLA leave.  Mr. Monfra echoed this idea and explicitly told the group they could not fire Ms. Majorie while she was on FMLA leave.  But Legendre told the group they could fire Ms. Majorie if they accused her of theft or some other misconduct unrelated to her leave.  Dahan agreed with the plan.  Monfra said they should not "poke a sleeping bear."  But Legendre and Dahan said if Ms. Majorie complained about getting fired while on leave, they would just report her for theft.  Monfra told the group they all knew Ms. Majorie never stole any company funds.  But Legendre said they could say management never approved any of Ms. Majorie's work expenses.  The gist of the conversation

was direct evidence that Dahan (and Legendre) conspired and agreed to fire Ms. Majorie not only because she had taken approved FMLA leave, but also to retaliate against her if she later complained about her illegal termination.

102.   Pursuant to their conspiracy, Dahan fired Ms. Majorie around February 11, 2022.

103.   Ms. Majorie received notice via a termination letter written by Dahan and delivered to her home via FedEx.

104.   In her termination letter, Dahan wrote "Since you have been on leave, we have discovered a number of issues, including, but not limited to, improper expenditures and a failure to bill clients in a timely manner.   We have also discovered a lack of diligence on your part in collections resulting in $300,000 of billings becoming delinquent and making the collection of these accounts doubtful.

105.   These allegations are false.

106.   Ms. Majorie never improperly made expenditures on behalf SPD or SPD Shuttle.

107.   Ms. Majorie never failed in her diligence to collect outstanding invoices owed to the companies.

108.   These allegations were ginned up by Dahan specifically to justify his otherwise illegal termination of Ms. Majorie, exactly as Mr. Monfra reported to Ms. Majorie from his eyewitness knowledge.

109.   Based on her interactions with Dahan, Ms. Majorie alleges he never would have fired her or planned to retaliate against her if she were a man, or Israeli, or ethnically or religiously Jewish.

110.   Additionally or alternatively, Dahan fired Ms. Majorie and conspired to retaliate against her because she took protected FMLA leave, and to interfere with her ability to continue taking her approved leave.

111.    Additionally or alternatively, Dahan fired Ms. Majorie and conspired to retaliate against her because she participated in the Louisiana Attorney General's investigation of alleged or suspected Medicaid fraud by SPD and agreed to testify about Tim Legendre's business activities if asked.

112.    Finally, after her termination, SPD and SPD Shuttle never paid Ms. Majorie for the 664 hours of unearned vacation time she was owed.

113.    After he terminated Ms. Majorie, Dahan replaced her with four different men.

114.    First, Ms. Majorie's accounting-related duties at SPD and SPD Shuttle were assigned to Tim Legendre.

115.    Second, Dahan hired a man named Joseph (last name unknown) to replace Ms. Majorie in her non-accounting duties at SPD and SPD Shuttle.  Mr. Monfra reported to Ms. Majorie that Dahan believed Joseph was (in context) ethnically or religiously Jewish when he hired him (however, later, Monfra indicated that Joseph told co-workers he was not Jewish).

116.    Third, Dahan hired two other men to assume Ms. Majorie's "Vice President" duties with respect to Dahan's transportation businesses in Florida and Texas.

**G.    Dahan Falsely Accuses Ms. Majorie of Business Theft**

117.    About one month after Ms. Majorie was terminated, she sent correspondence through her attorney to SPD, SPD Shuttle, and Dahan.

118.    That correspondence specifically complained that SPD and SPD Shuttle unlawfully terminated Ms. Majorie under the FMLA; Title VII and related Louisiana discrimination law; and the federal False Claims Act and related Louisiana whistleblower law.  The correspondence specifically accused SPD and SPD Shuttle of illegally discriminating against Ms. Majorie because she had taken approved FMLA leave, because of her sex, and because she participated in the

Louisiana Attorney General's investigation into (as Ms. Majorie understood it) alleged or suspected Medicaid fraud at SPD.  The correspondence also demanded payment of Ms. Majorie's 664 hours of unpaid vacation leave along with damages for Ms. Majorie's unlawful termination.

119.    The correspondence also demanded that SPD and SPD Shuttle, along with its owners and employees, "immediately preserve all information, documents, emails, text messages, voicemails, and other discoverable evidence" related to Ms. Majorie's claims in anticipation of litigation.

120.    Seven days later – on March 27, 2022 – Dahan posted an apparent threat to Ms. Majorie on his Facebook and TikTok profiles:

> "So in any business, you're going to have ups and downs all the time, but if you quit, that's when you fail. Sometimes people will try to hurt you, try to sabotage you, don't let them do that. Make sure you get everything in your power to destroy those people if you find out they did it on purpose."[3]

121.    Two days later – on March 29, 2022 – defense counsel for SPD and SPD Shuttle acknowledged that Dahan had forwarded her Ms. Majorie's demand letter.

122.    Two days after that – on March 31, 2022 – Dahan posted another apparent complaint about Ms. Majorie entitled "Jealousy is a very dangerous thing":

> "So how do you deal with people who are jealous of you and your company? You find out sometime there are employees that saying they deserve more than you do, just because they working for you. People like this have to be dealt with immediately and make them understand that everything the owner has is because usually they put everything on the line and they work very hard for it . . . that's the difference between entrepreneurs and people that just want to have what you have but don't do everything that they need to do to get there."[4]

123.    Less than two weeks later – on or about April 11, 2022 – Dahan filed a criminal complaint against Ms. Majorie with the Jefferson Parish Sheriff's Office alleging business theft, specifically that Ms. Majorie made $5,110.41 in unauthorized credit card charges on a "business credit card

---

[3]  https://www.tiktok.com/@ro.dahan/video/7079831635402837291. The apparent threat was also posted to Facebook but appears to have been deleted at some point after June 2022.
[4]  https://www.tiktok.com/@ro.dahan/video/7081284416785616174

that was on file which Mrs. Majorie had access to due to her position with the company."  Dahan also alleged that Ms. Majorie "advance[d] herself through payroll checks" in the amount of $12,348.77.

124.    First, these allegations are false.  Ms. Majorie never made any unauthorized credit card charges while employed by SPD or SPD Shuttle.  She never made unauthorized payroll payments to herself.

125.    Second, Ms. Majorie alleges Dahan knows these allegations are false (because they are objectively untrue), and Dahan purposefully filed a criminal complaint against Ms. Majorie in retaliation against her for opposing and complaining about her unlawful termination under the FMLA, Title VII and the LEDL, and the False Claims Act and related Louisiana whistleblower law.

126.    Based on Mr. Monfra's eyewitness reports, Dahan setup this pretext before he fired Ms. Majorie and wrote in her termination letter that she had been fired based on "improper expenditures" as a veiled threat against Ms. Majorie complaining in the future.

127.    Additionally or alternatively, based upon all the facts and circumstances alleged throughout this lawsuit, SPD, SPD Shuttle, and Rotem Dahan purposefully and maliciously fired Ms. Majorie, and later falsely accused her of business theft, because of her sex, race, religion, national origin, her use of protected FMLA leave, and her participation in the Louisiana Attorney General's investigation into potential or suspected Medicaid fraud.

128.    Additionally or alternatively, based upon all the facts and circumstances alleged throughout this lawsuit, SPD, SPD Shuttle, and Rotem Dahan purposefully and maliciously retaliated against Ms. Majorie because she complained that her termination violated the FMLA, Title VII and the LEDL, and the False Claims Act and related Louisiana whistleblower law.

129.    On or about May 26, 2022, based on Dahan's purposefully false allegations of business theft, St. Tammany Parish Sheriff's deputies arrested Ms. Majorie at her home, while her children were present, and booked Ms. Majorie into the St. Tammany Parish jail.

130.    Ms. Majorie was released a short time later without any bail conditions.

131.    To date, the Jefferson Parish District Attorney's Office has not accepted any criminal charge arising from Dahan's criminal allegations, and Ms. Majorie has not been billed or indicted for any crime.

**H.    The Aftermath**

132.    Ms. Majorie, her children, and her family, were of traumatized by her arrest based on Rotem Dahan's purposefully false and retaliatory accusations of business theft, and Ms. Majorie has suffered extraordinary mental anguish, emotional distress, and loss of reputation because of it.

133.    Ms. Majorie continues to suffer extraordinary emotional distress, mental anguish, and loss of reputation every day that SPD, SPD Shuttle, and Dahan do not admit they falsely accused Ms. Majorie of business theft.

134.    Ms. Majorie suffered significant lost wages because of her unlawful termination.

135.    Ms. Majorie suffered significant emotional distress, suffering, and mental anguish because of her unlawful termination.

136.    Ms. Majorie suffered other compensatory and monetary losses because of her unlawful termination and defendants' false and retaliatory accusations of business theft.

**CAUSES OF ACTION**

137.    The causes of action here are divided into four groups based on the adverse action at issue. The first group of claims (Group A) arise from the defendants' unlawful termination of Ms. Majorie's employment because of her protected FMLA leave; because of her race, sex, religion,

23

and national origin; and because she participated in the Louisiana Attorney General's investigation into alleged or suspected Medicaid fraud at SPD.

138.    The second group of claims (Group B) arise from defendants' false accusation against Ms. Majorie that she committed business theft, done in retaliation against her because she complained about her wrongful termination under the FMLA, Title VII, the LEDL, the Federal False Claims Act, and the Louisiana Medical Assistance Programs Integrity Law.

139.    The third group of claims (Group C) arise from defendants' false accusation against Ms. Majorie that she committed business theft, which Ms. Majorie additionally or alternatively alleges defendants would not have made but-for Ms. Majorie's race, sex, religion, and national origin.  In other words, that SPD, SPD Shuttle, and Dahan would not have falsely accused Ms. Majorie of theft – even after she complained about her wrongful termination – if she were a man, from Israel, or ethnically or religiously Jewish.

140.    The fourth and final group of claims (Group D) are for Ms. Majorie's unpaid wages and compensation under the Louisiana Wage Payment Act.

**A1.    Wrongful Termination and Interference with Protected Medical Leave under the FMLA against SPD, SPD Shuttle, and Rotem Dahan**

141.    Plaintiff asserts a cause of action for wrongful termination and interference with Ms. Majorie's use of protected medical leave under the FMLA against SPD, SPD Shuttle, and Rotem Dahan.

142.    The Family and Medical Leave Act requires an employer to provide a covered employee with up to 12 weeks of medical leave because of a serious health condition, *see* 29 U.S.C. § 2612(a)(1)(C) and (a)(1)(D), and to reinstate the employee to her former position when she returns. 29 U.S.C. § 2614(a)(1)(A).  An employer is prohibited from "interfer[ing] with . . . any right" under the FMLA.  29 U.S.C. § 2615(a).  Both an employer and anyone who "acts, directly or

indirectly, in the interests of any employer . . . may be subject to liability in his individual capacity." *Modica v. Taylor*, 465 F.3d 174, 184 (5th Cir. 2006).  An employer or individual who violates the FMLA is liable for the affected employee's lost wages, judicial interest, liquidated damages, reasonable attorney's fees and costs, and any other appropriate equitable relief.  29 U.S.C. § 2617 *et seq.*

143.    A plaintiff proves a prima facie case for FMLA interference by showing "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)

144.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

145.    As alleged, Ms. Majorie was a covered employee under the FMLA because she had worked for SPD and SPD Shuttle for more than 12 months prior to her FMLA leave; had worked more than 1,250 hours in the prior year; had not already exhausted her use of FMLA leave; suffered from a serious health condition for which she had sought and received a course of medical treatment; requested FMLA leave; and was approved for FMLA leave by Salvador Monfra, who was an officer of the companies authorized to approve the leave.

146.    SPD and SPD Shuttle were covered employers under the FMLA and were either Ms. Majorie's joint employers or constituted a single integrated employer with respect to FMLA coverage.  SPD and SPD Shuttle each employed at least 50 employees for at least twenty continuous weeks in 2022 and 2021.  Whether as her joint employers or as a single integrated employer, at least 50 of SPD and SPD Shuttle's employees were assigned to SPD and SPD Shuttle's shared headquarters in Metairie, Louisiana or were otherwise located and worked within

75 miles of that location at the time Ms. Majorie requested her FMLA leave.

147. SPD, SPD Shuttle, and Rotem Dahan admittedly terminated Ms. Majorie because she had taken protected FMLA leave and to prevent her from continue taking protected leave. Salvador Monfra was an eyewitness during the meeting in which Rotem Dahan conspired with Tim Legendre to pretextually fire Ms. Majorie for these reasons. Mr. Monfra reported the conversations to Ms. Majorie.

148. In addition to firing Ms. Majorie to interfere with her continued FMLA leave, plaintiff alleges SPD, SPD Shuttle, and Dahan terminated Ms. Majorie in retaliation against her because she requested and used her approved FMLA leave.

149. At the time of her termination, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer. In all material respects he acted as and for her employers, SPD and SPD Shuttle. Dahan is the person who actually fired Ms. Majorie. Dahan purposefully fired Ms. Majore because of her FMLA leave. SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

150. Accordingly, SPD, SPD Shuttle, and Rotem Dahan are each liable to Ms. Majorie for all her damages arising from her unlawful termination and interference with FMLA rights, including her lost wages, judicial interest, liquidated damages, attorney's fees and costs incurred in the matter, and any other appropriate equitable relief.

**A2.** **Wrongful Termination and Unlawful Disparate-Treatment Discrimination Based on Race, Sex, Religion, and National Origin against SPD and SPD Shuttle under Title VII**

151. Ms. Majorie states a cause of action for wrongful termination and unlawful disparate-treatment discrimination because of, or at least motived by, her race (white, not ethnically Jewish), sex (female), religion (Christian, not Jewish), and national origin (United States, not from Israel) against SPD and SPD Shuttle under Title VII.

152.     Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race . . . religion . . . sex, or national origin[.]"  42 U.S.C. §2000e-2(a)(1).  An employer illegally terminates an employee when the decision is "because of" the worker's protected status.  *Id.*  An employer also illegally terminates an employee when the decision is "was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m); *accord Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (so holding). In a Title VII action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action.  *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).  Under Title VII, a prevailing plaintiff is entitled to her back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and litigation costs incurred in the matter.

153.     Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

154.     Throughout Ms. Majorie's entire employment at SPD and SPD Shuttle, Rotem Dahan said and did things in the workplace that evinced his strong preference for workers who were men, Israeli, and ethnically or religiously Jewish, and his animus against women, non-Israelis, and non-Jewish people.  Dahan twice called Ms. Majorie a "pussy."  He told Ms. Majorie that she "didn't have a brain" and wasn't a "business person" because, in context, she was a woman.  Ms. Majorie never saw Dahan speak to his male subordinates that way.  Dahan told Ms. Majorie, explicitly, that men made better executives then women.  Dahan preferred hiring men who were objectively less qualified than women for management positions.  Dahan told Ms. Majorie men were

"stronger" and "better organized" than women.  After two women resigned their management jobs, Dahan explicitly told Ms. Majorie he was only going to hire Jewish men for his executive positions. Dahan told Ms. Majorie Jewish people were "more business oriented" and made better workers. Dahan told Ms. Majorie non-Jewish people were "jealous" and "greedy."  Dahan repeated similar thoughts on his public social media page on November 24, 2022 when he said "That's why everybody's jealous" of, in context, Jewish people.  Dahan told Ms. Majorie that "if I could I'd fire all of you and replace you with Jews from Israel."  Dahan told Ms. Majorie he didn't want to work with a particular busines person in Florida because he was a "European Jew" as opposed to, in context, a Jewish person from Israel.

155.    After Ms. Majorie began her approved FMLA medical leave in January 2022, Dahan told Mr. Monfra he was angry Ms. Majorie was "being paid to sit at home" and wanted to fire her because of it.  In context, this animus was based on Dahan's biased beliefs about women, non-Israelis, and non-Jewish people.  Dahan believed Ms. Majorie was "sitting at home" because she was not as "strong" as a man, and because she was a "greedy" and "jealous" person based on her ethnicity, religion, and national origin.  In other words, had Ms. Majorie taken the same, approved FMLA leave but was an ethnically or religiously Jewish man from Israel, Dahan would not have fired her.

156.    After Dahan fired Ms. Majorie, he replaced her with four men, one of whom Dahan apparently believed was Jewish.  Dahan first assigned Ms. Majorie's accounting-related duties to Tim Legendre.  Dahan replaced Ms. Majorie in her operational role at SPD and SPD Shuttle with a man named Joseph that, based on Salvador Monfra's reports, Dahan believed to be a Jewish man. Dahan also replaced Ms. Majorie in her operational roles in Dahan's related Texas and Florida transportation companies with two men (one in Texas, and one in Florida).

157.    At the time of Ms. Majorie's termination, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who actually fired Ms. Majorie.  Dahan purposefully fired Ms. Majorie because of her race, sex, religion, and national origin.  Alternatively, Dahan's termination decision was at least motivated by Ms. Majorie's race, sex, religion, and national origin.  SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

158.    Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from her unlawful termination, including her lost back wages, reinstatement or front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

### A3.    Wrongful Termination and Unlawful Disparate-Treatment Discrimination based on Race against SPD, SPD Shuttle, and Rotem Dahan under 42 U.S.C. § 1981

159.    Ms. Majorie states a cause of action for wrongful termination and unlawful disparate-treatment discrimination because of Ms. Majorie's race against SPD, SPD Shuttle, and Rotem Dahan under 42 U.S.C. § 1981.

160.    Pursuant to Section 1981 of the Civil Rights Act of 1866 (as amended), "all persons in the United States shall have the same contractual rights as white citizens."  42 U.S.C. § 1981. Section 1981's coverage extends to all people of all races, including white people.  *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296 (1976) (so holding).  Section 1981's prohibition of race-based discrimination includes discrimination based on characteristics associated with a person's ancestry or ethnicity.  *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (so holding).  And Jewish ethnicity or non-ethnicity is a protected status under Section 1981.  *Domanic v. Christian Bros. Auto. Corp.*, CV H-22-386, 2022 WL 2788885 at *1 (S.D. Tex. July 15, 2022) ("As an ethnic Jew, [plaintiff] is a member of a protected racial minority group within the meaning

of Section 1981").

161.     Section 1981 claims are analyzed under the Title VII framework.  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).  Under Section 1981, the individual decision-maker who purposefully discriminates against a worker is directly liable in addition to the employer. *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988).  Otherwise, an employer is vicariously liable for its manager's discriminatory acts when the manager serves as the employer's agent, or when the employer knew or should have known of the manager's discriminatory conduct and took no remedial action.  *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000).  Under Section 1981, a prevailing plaintiff is entitled to her back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and litigation costs incurred in the matter.

162.     Plaintiff hereby incorporates and re-alleges here all prior allegations in this Complaint.

163.     As alleged throughout this lawsuit, Dahan terminated Ms. Majorie because of her race, ancestry, and ethnicity.  Specifically, Dahan terminated Ms. Majorie because she is not ethnically Jewish.  Stated another way, Dahan would not have fired Ms. Majorie had she been ethnically Jewish.

164.     At the time of Ms. Majorie's termination, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who actually fired Ms. Majorie.  Dahan purposefully fired Ms. Majore because of her race and ethnicity.  SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

165.     Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from her unlawful termination, including her lost back wages, reinstatement or

front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

### A4.   Wrongful Termination and Unlawful Disparate-Treatment Discrimination based on Race, Sex, Religion, and National Origin against SPD and SPD Shuttle under the LEDL

166.   Ms. Majorie states a cause of action for wrongful termination and unlawful disparate treatment discrimination based on race, sex, religion, and national origin under the Louisiana Employment Discrimination Law, codified at La. Rev. Stat. Ann. § 23:301 *et seq.*, against SPD and SPD Shuttle.

167.   Under the LEDL, no employer may discriminate against an employee based on her race, sex, religion, or national origin.  La. Rev. Stat. Ann. § 23:332(A)(1)*.*  LEDL disparate-treatment claims are analyzed under the analogous Title VII standard.  *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

168.   Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

169.   Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for race, sex, religion, and national origin discrimination under Title VII, SPD and SPD Shuttle are liable to Ms. Majorie for all her damages arising from their unlawful discrimination, including lost back wages, lost future wages or reinstatement, compensatory damages, and reasonable attorney's fees and costs incurred in this matter.

### A5.   Wrongful Termination and Unlawful Disparate-Treatment Retaliation because of Protected Activity against SPD, SPD Shuttle, and Rotem Dahan under the federal False Claims Act

170.   Ms. Majorie states a cause of action for wrongful termination and unlawful disparate treatment retaliation because of her protected activity against SPD, SPD Shuttle, and Rotem Dahan

under the False Claims Act codified at 31 U.S.C. § 3730(h) (as amended).

171.    Under the False Claims Act, any "employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged . . . threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of . . . efforts to stop 1 or more violation of this subchapter."  31 U.S.C. § 3730(h).

172.    A plaintiff proves a prima facie case of retaliation under the False Claims Act by showing "(1) she engaged in protected activity; (2) the employer knew about the protected activity; and (3) the employer retaliated against the employee because of her protected activity." *Wondercheck v. Maxim Healthcare Servs., Inc.*, 495 F.Supp.3d 472, 480 (W.D. Tex. 2020) (citing *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 332 (5th Cir. 2017).  "A protected activity is one motivated by a concern regarding fraud against the government."  *Thomas v. ITT Educ. Servs., Inc.*, 517 Fed.Appx. 259, 262 (5th Cir. 2013).  Even "[i]nternal complaints that 'concern false or fraudulent claims for payment submitted to the government' [are] protected activity under the Act [so long as] the complaints raise concerns about fraud."  *U.S. ex rel. George v. Boston Sci. Corp.*, 864 F.Supp.2d 597, 605 (S.D. Tex.2012) (quoting *U.S. ex rel. Patton v. Shaw Services, LLC*, 418 Fed.Appx. 366, 372 (5th Cir. 2011)).  A prevailing plaintiff is entitled to "all relief" to make the employee "whole," including two-times lost back wages, interest on back wages, and compensation for all special damages sustained because of the discrimination, including litigation costs and reasonable attorney's fees.  31 U.S.C. §§ 3730(h)(1) and 3730(h)(2).

173.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

174.    As alleged, SPD, SPD Shuttle, and Rotem Dahan terminated Ms. Majorie because she voluntarily participated in the Louisiana Attorney General's investigation into alleged or suspected Medicaid fraud, and because she agreed to further testify into the business activities of Tim

Legendre if necessary.  To the best of her recollection, Ms. Majorie met with two investigators from the Louisiana Attorney General's office around July 2021.  These agents were assigned to the Attorney General's "Medicaid Fraud Control Unit."  Ms. Majorie understood the Attorney General's Office was investigating allegations that SPD had submitted or was submitting background-investigation reports for their drivers to Medicaid that included false and inaccurate information for the purpose of obtaining authorization to use those drivers to transport Medicaid-eligible patients so that SPD could then bill Medicaid for those services.

175.    Ms. Majorie told both Salvador Monfra and Rotem Dahan that she had given information to the investigators about the alleged or suspected fraud and had further agreed to testify concerning Mr. Legendre's practices if asked.  At the time, Mr. Legendre was no longer employed by the company because he had recently sold his ownership interest to Dahan.

176.    But, on January 4, 2022, Dahan re-hired (either as an employee or contractor) Legendre as SPD and SPD Shuttle's new Chief Financial Officer and assigned him as Ms. Majorie's new, immediate manager.  Dahan knew that hiring Legendre was incompatible with Ms. Majorie's continued employment after she had agreed to testify against Legendre if asked.  Dahan held a meeting with Legendre and Salvador Monfra a few weeks later during which he and Legendre proposed to fire Ms. Majorie and, if she complained, they would simply accuse her of business theft.

177.    Based on these allegations, additionally or in the alternative to any other cause of action in this lawsuit, Ms. Majorie asserts that SPD, SPD Shuttle, and Rotem Dahan terminated her employment because she participated in the Attorney General's investigation into alleged or suspected Medicaid fraud at SPD and because she agreed to testify about Legendre's business activities if asked.  Dahan's decision to rehire Legendre and assign him as Ms. Majorie's manager

setup an inevitable confrontation within SPD whereby only Ms. Majorie or Legendre could continue working for the company.  Dahan's decision to rehire Legendre was tacit admission that he chose Legendre over Ms. Majorie.  Ms. Majorie alleges that Dahan would not have conspired with Legendre to pretextually fire Ms. Majorie and, then, falsely accuse her of theft if she complained, had she not participated in the Louisiana Attorney General's investigation or agreed to later testify if asked.

178.    At the time of Ms. Majorie's termination, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who actually fired Ms. Majorie.  Dahan purposefully fired Ms. Majorie because of her protected activities.  SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

179.    Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from her unlawful termination, including two times her lost back wages, interest on the back wages, reinstatement or front pay, compensatory damages, reasonable attorney's fees and costs incurred in this matter, and all other relief to make Ms. Majorie whole.

**A6.    Wrongful Termination and Unlawful Disparate-Treatment Retaliation because of Protected Activity against SPD, SPD Shuttle, and Rotem Dahan under the Louisiana Medical Assistance Programs Integrity Law**

180.    Ms. Majorie states a cause of action for wrongful termination and unlawful disparate treatment retaliation because of her protected activity against SPD, SPD Shuttle, and Rotem Dahan under the Louisiana Medical Assistance Programs Integrity Law, codified at 46:437.1 *et seq.*

181.    The "whistleblower provision" of the Medical Assistance Programs Integrity Law "is intended to protect individuals reporting violations under the statute from threats, harassment or discrimination*." Mixon v. Iberia Surgical, L.L.C.*, 2006-878, p. 7 (La. App. 3 Cir. 4/18/07); 956

So.2d 76.  Like under the False Claims Act, "no person" under Louisiana law "shall knowingly engage in misrepresentation" or "make . . . a false record . . . material to an obligation to pay . . . to the medical assistance programs."  Under La. Rev. Stat. Ann. § 46:439.1(E), "[a]ny employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if the employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action in accordance with this Part or other efforts to stop one or more violations of this Part."

182.    An employer who violates the Medical Assistance Programs Integrity Law is liable to the employee for "two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney fees."  La. Rev. Stat. Ann. § 46:439.1(E)(1).  A prevailing plaintiff is also entitled to exemplary damages.  La. Rev. Stat. Ann. § 46:440.3(C)(2).

183.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

184.    Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for wrongful termination and retaliation under the federal False Claims Act, defendants are liable to Ms. Majorie for all damages required to make her whole, including two times her lost back wages, interest on the back wages, reinstatement or front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

**B1.    False Accusation of Theft and Disparate-Treatment Retaliation Based on Protected Complaints under the FMLA against SPD, SPD Shuttle, and Rotem Dahan**

185.    Plaintiff asserts a cause of action for false accusation of theft and disparate-treatment retaliation based on Ms. Majorie's protected complaints under the FMLA against SPD, SPD

Shuttle, and Rotem Dahan.

186.    An employer may not "in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  29 U.S.C. § 2615(a)(2).  Likewise, no employer or any other person may "in any other manner discriminate against any individual because such individual . . . has given, or is about to give . . . [or] has testified, or is about to testify, in any inquiry or proceeding relating to any right provided" under the FMLA.  29 U.S.C. § 2615(b) *et seq.*  Sending a demand letter through counsel for settlement of an alleged FMLA violation constitutes protected opposition under the statute.  *Mahoney v. Ernst & Young LLP*, 487 F.Supp.2d 780, 808 (S.D. Tex. 2006) ("The [demand] letter clearly opposed Defendant's actions that allegedly violated Plaintiff's FMLA rights, including her right to reinstatement"); *accord E.E.O.C. v. Dunbar Diagnostic Servs. Inc.*, 92 Fed.Appx. 83 (5th Cir. 2004) (finding in analogous Title VII case that "hiring a lawyer and threatening a lawsuit" constituted a "protected activity").  Both an employer and anyone who "acts, directly or indirectly, in the interests of any employer . . . may be subject to liability in his individual capacity."  *Modica v. Taylor*, 465 F.3d 174, 184 (5th Cir. 2006).  An employer or individual who violates the FMLA is liable for the affected employee's lost wages, damages for actual monetary losses equal to up to 12 weeks' pay, judicial interest, liquidated damages, reasonable attorney's fees and costs, and all other appropriate, equitable relief.  29 U.S.C. § 2617 *et seq.*

187.    A plaintiff proves a prima facie case for FMLA retaliation by showing "(1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action."  *Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016)

188.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

189.     As alleged, SPD, SPD Shuttle, and Rotem Dahan fired Ms. Majorie around February 11, 2022 because she took protected FMLA leave and to keep her from continuing that leave.  Based on Salvador Monfra's eyewitness reports, and before he terminated her employment, Dahan had already planned to falsely accuse Ms. Majorie of business theft if she challenged her unlawful termination.

190.     On February 20, 2022, Ms. Majorie, through counsel, asserted by letter that SPD, SPD Shuttle, and Dahan violated the FMLA by firing Ms. Majorie under the circumstances described throughout this lawsuit.   Ms. Majorie offered settlement of the claims and, simultaneously, demanded that SPD, SPD Shuttle, and its owners and employees begin preserving all evidence relevant to her claims in anticipation of litigation.  Seven days later, on March 27, Dahan posted a video to his Facebook and TikTok accounts implicitly threatening to "destroy" Ms. Majorie, saying "Sometimes people will try to hurt you, try to sabotage you, don't let them do that. Make sure you get everything in your power to destroy those people if you find out they did it on purpose."

191.     Two days after that, defense counsel acknowledged Dahan had forwarded her Ms. Majorie's demand.  Two days after that, on March 31, 2022, Dahan posted another video to his TikTok and Facebook accounts implicitly calling Ms. Majorie "jealous" of Dahan and indicating that she must be "dealt with immediately," saying "So how do you deal with people who are jealous of you and your company? You find out sometime there are employees that saying they deserve more than you do, just because they working for you. People like this have to be dealt with immediately . . . ."

192.     Less than two weeks later, Dahan filed a criminal complaint against Ms. Majorie with the Jefferson Parish Sheriff's Office accusing her of business theft.  That allegation is false, and Dahan knows it is false.  In reality, Dahan was merely acting out the retaliation he first planned during

his meeting with Tim Legendre and Mr. Monfra after Ms. Majorie began her protected FMLA medical leave (and before she was fired).

193.     Because of Dahan's false complaint, Ms. Majorie has incurred monetary losses including but not limited to attorney fees in the Jefferson Parish case.

194.     At both the time of her termination and when Dahan falsely accused her of theft, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who actually retaliated against Ms. Majorie as described in this lawsuit.  Dahan purposefully and falsely accused Ms. Majorie of business theft because she opposed her unlawful termination under the FMLA.  SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

195.     Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from defendants' retaliation, including her monetary losses up to 12 weeks' pay, judicial interest, liquidated damages, attorney's fees and costs incurred in the matter, and all equitable relief to which she is entitled.

## B2. False Accusation of Theft and Disparate-Treatment Retaliation Because of Protected Complaints under Title VII against SPD and SPD Shuttle

196.     Ms. Majorie states a cause of action for false accusation of business theft and disparate treatment retaliation because of protected complaints against SPD and SPD Shuttle under Title VII.

197.     Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. §2000e-3(a).  In a retaliation case, "an adverse employment action is one that 'a reasonable

employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)).  "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  An employer is liable for post-employment retaliation against former employees. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

198.    Just as in a Title VII discrimination case, an employer remains vicariously liable for the acts of its decision-maker when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action.  *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

199.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

200.    As alleged, SPD, SPD Shuttle, and Rotem Dahan fired Ms. Majorie around February 11, 2022 because of her sex, race, religion, and national origin.  Based on Salvador Monfra's eyewitness reports, and before he terminated her employment, Dahan had already planned to falsely accuse Ms. Majorie of theft if she challenged her unlawful termination.  On March 20, 2022, Ms. Majorie sent correspondence through her attorney to Dahan alleging that her termination was unlawful under Title VII (specifically because of sex discrimination), offering an amicable compromise, and demanding that SPD, SPD Shuttle, and Dahan begin preserving evidence relevant to her claims in anticipation of litigation.  In response and retaliation to that protected activity, as alleged throughout this lawsuit, Dahan then falsely accused Ms. Majorie as business

theft as punishment. Ms. Majorie alleges Dahan would not have falsely accused Ms. Majorie of business theft if she had not challenged and opposed her illegal termination.

201. At both the time of her termination and when Dahan falsely accused her of theft, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer. In all material respects he acted as and for her employers, SPD and SPD Shuttle. Dahan is the person who actually retaliated against Ms. Majorie as described in this lawsuit. Dahan purposefully and falsely accused Ms. Majorie of business theft because she opposed her unlawful termination under Title VII. SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

202. Accordingly, SPD and SPD Shuttle are liable to Ms. Majorie for all her damages arising from defendants' retaliation including her lost wages, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

**B3.** **False Accusation of Theft and Disparate-Treatment Retaliation Because of Protected Complaints under the LEDL against SPD and SPD Shuttle**

203. Ms. Majorie states a cause of action for false accusation of business theft and disparate treatment retaliation because of protected complaints against SPD and SPD Shuttle under the LEDL.

204. An employer is prohibited from conspiring "to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by . . . Chapter 3-A of Title 23 of the Louisiana Revised Statues of 1950 [the LEDL.]" Discrimination based on sex is illegal under the LEDL. La. Rev. Stat. Ann. § 23:332(A)(1).

205. Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

206. Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for retaliation under Title VII, SPD and SPD Shuttle are liable to Ms. Majorie for all her damages arising from their conspiracy to retaliate against Ms.

Majorie by falsely accusing her of business theft, including her lost wages, compensatory damages, and reasonable attorney's fees and costs incurred in this matter.

### B4.   False Accusation of Theft and Disparate-Treatment Retaliation Because of Protected Complaints against SPD, SPD Shuttle, and Rotem Dahan under the False Claims Act

207.    Ms. Majorie states a cause of action for false accusations of theft and unlawful disparate treatment retaliation because of her protected activity against SPD, SPD Shuttle, and Rotem Dahan under the False Claims Act codified at 31 U.S.C. § 3730(h) (as amended).

208.    An employer is liable for post-employment retaliation against former employees under the False Claims Act. *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 435 (6th Cir. 2021) ("We therefore hold that the anti-retaliation provision of the FCA may be invoked by a former employer");[5] *accord Smith v. Athena Constr. Grp., Inc.*, 18-CV-2080 (APM), 2022 WL 888188 at *18 (D.D.C. Mar. 25, 2022) (citing to *Felten*).

209.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

210.    Before her termination, SPD, SPD Shuttle, and Dahan had already planned to falsely accuse Ms. Majorie of business theft if she challenged her unlawful termination.  On March 20, 2022, Ms. Majorie sent correspondence through her attorney to Dahan specifically opposing her termination as illegal under the False Claims Act and demanding that SPD, SPD Shuttle, and Dahan begin preserving evidence relevant to her claims in anticipation of litigation.

211.    Thereafter, Dahan posted to his social media profiles an apparent threat that he intended to "destroy" Ms. Majorie, and that employees like Ms. Majorie must be "dealt with immediately." About two weeks later, Dahan filed a criminal complaint against Ms. Majorie with the Jefferson Parish Sheriff's Office falsely accusing of her business theft.

---

[5] *Cert. denied sub nom. William Beaumont Hosp. v. United States*, 211 L.Ed.2d 605; 142 S.Ct. 896 (2022)

212.     Plaintiff alleges that Dahan did so in further retaliation against Ms. Majorie for participating in the Louisiana Attorney General's original investigation into alleged or suspected Medicaid fraud in July 2021, for agreeing to testify regarding Legendre's activities if asked, and for opposing her termination based on that original retaliation, and demanding that defendants begin preserving relevant evidence in anticipation of litigation of those claims.

213.     At both the time of her termination and when Dahan falsely accused her of theft, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who actually retaliated against Ms. Majorie as described in this lawsuit.  Dahan purposefully and falsely accused Ms. Majorie of business theft because of her protected opposition and activities.  SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

214.     Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from defendants' retaliation, including two times her lost back wages, interest on the back wages, reinstatement or front pay, compensatory damages, reasonable attorney's fees and costs incurred in this matter, and all other relief to make Ms. Majorie whole.

**B5.     False Accusation of Theft and Disparate-Treatment Retaliation Because of Protected Complaints against SPD, SPD Shuttle, and Rotem Dahan under the Louisiana Medical Assistance Programs Integrity Law**

215.     Ms. Majorie states a cause of action for unlawful disparate treatment retaliation because of her protected opposition and activity against SPD, SPD Shuttle, and Rotem Dahan under the Louisiana Medical Assistance Programs Integrity Law, codified at 46:437.1 *et seq.*

216.     Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

217.     Accordingly, for all the reasons stated throughout this complaint, and specifically incorporating the analysis of plaintiff's claims for false accusation of theft and retaliation under

the federal False Claims Act, defendants are liable to Ms. Majorie for all damages required to make her whole, including two times her lost back wages, interest on the back wages, reinstatement or front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

**C1     False Accusation of Theft and Unlawful Disparate-Treatment Discrimination because of Race, Sex, Religion, and National Origin against SPD, SPD Shuttle, and Rotem Dahan under 42 U.S.C. § 1981 and Title VII**

218.    Ms. Majorie states a cause of action for false accusation of theft and unlawful disparate-treatment discrimination because of Ms. Majorie's race, sex, religion, and national origin against SPD, SPD Shuttle, and Rotem Dahan under 42 U.S.C. § 1981 and Title VII (as applicable).

219.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

220.    Additionally or in the alternative to any other cause of action in this lawsuit, and based on Dahan's repeated statements and actions evincing animus against Ms. Majorie based on her race, ethnicity, sex, and national origin, Ms. Majorie alleges that SPD, SPD Shuttle, and Rotem Dahan would not have falsely accused her of business theft – even after she had complained about her unlawful termination – were she ethnically Jewish, or a man, or religiously Jewish, or from Israel. In other words, that defendants falsely accused Ms. Majorie of business theft because of her race, ethnicity, sex, religion, and national origin.

221.    At the time of Ms. Majorie's termination, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Before Ms. Majorie was terminated, Dahan had already decided to falsely accuse Ms. Majorie of theft if she challenged her unlawful termination, and Dahan laid the groundwork for this future discrimination in his termination letter to Ms. Majorie, falsely alleging that he had "discovered a number of issues, including, but not limited to, improper expenditures . . . ."

222.    At both the time of her termination and when Dahan falsely accused her of theft, Dahan was SPD and SPD Shuttle's sole owner and chief executive officer.  In all material respects he acted as and for her employers, SPD and SPD Shuttle.  Dahan is the person who falsely accused Ms. Majorie of business theft as described in this lawsuit.  Dahan purposefully and falsely accused Ms. Majorie of business theft because of her race, ethnicity, sex, religion, and national origin. SPD, SPD Shuttle, and Dahan are each liable for his unlawful actions.

223.    Accordingly, SPD, SPD Shuttle, and Rotem Dahan are liable to Ms. Majorie for all her damages arising from defendants' unlawful discrimination, including her lost wages, compensatory damages, punitive damages, and reasonable attorney's fees and costs incurred in this matter.

**D1.    Unlawful Failure to Pay Owed Wages and Compensation under the Wage Payment Act against SPD and SPD Shuttle**

224.    Ms. Majorie states a cause of action against SPD and SPD Shuttle for earned but unpaid wages and compensation pursuant to the Louisiana Wage Payment Act codified at La. Rev. Stat. Ann. § 23:631 *et seq*.

225.    Under the Wage Payment Act, an employer is strictly liable to pay an employee any "amount then due under the terms of employment," at most 15 days after the termination of their employment for any reason.  La. Rev. State. Ann. § 23:631(A)(1)(a).  "Vacation pay" is considered "an amount due" if the "employee is deemed eligible for and has accrued the right to take vacation time with pay" and the "employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation."  La. Rev. Stat. Ann. § 23:631(D)(1) *et seq.*

226.    An employer who fails to pay all amounts due to an employee after termination is liable to the employee "either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or

tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages." La. Rev. Stat. Ann. § 23:632(A). A prevailing employee is also entitled to his attorney's fees and costs incurred in bringing a lawsuit to recover unpaid wages. La. Rev. Stat. Ann. § 23:632(C).

227.    Plaintiff incorporates by reference here all the factual allegations alleged in this lawsuit.

228.    As alleged in this lawsuit, SPD and SPD Shuttle had a vacation-time policy in place throughout Ms. Majorie's employment, and Ms. Majorie had accrued 664 hours of paid vacation time at the time of her termination. As alleged, Ms. Majorie was entitled to take the paid leave at the time of her termination, had not previously used the time or been paid for it, and thus the value of the earned but unused vacation leave was an amount due at the time of her termination.

229.    Ms. Majorie demanded payment of her unpaid vacation leave most recently on March 20, 2022 when Ms. Majorie demanded through correspondence by her attorney to SPD, SPD Shuttle, and Dahan payment of her unpaid, 664 hours of leave. To date, SPD and SPD Shuttle have never paid this amount. To date, more than 90 days have passed since Ms. Majorie most recently demanded payment.

230.    As alleged, at the time of her termination, Ms. Majorie had accrued 664 hours of earned but unused paid vacation leave.

231.    At the time of her termination, Ms. Majorie earned a yearly salary of $75,000 per year (plus bonus). Assuming a regular, 40-hour work week for 52 weeks in a year, Ms. Majorie's hourly rate of pay equaled at least $36.05. Multiplied by her 664 hours of unused vacation leave, SPD and SPD Shuttle owe Ms. Majorie at least $23,937.20.

232.    Assuming the same hourly rate, and assuming a regular, eight-hour day of work, Ms. Majorie's daily pay rate equaled at least $288.40. Multiple by 90 days, SPD and SPD Shuttle owe

Ms. Majorie penalty wages of at least $25,956.00.  SPD and SPD Shuttle also owe Ms. Majorie

her reasonable attorney's fees and costs incurred in brining this claim.

## RESERVATION OF AMENDMENT

Ms. Majorie reserves the right to amend this lawsuit as circumstances warrant.

## JURY DEMAND

Ms. Majorie requests a trial by jury on all issues and causes of action triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Lacey Majorie prays that this complaint be deemed good and

sufficient; that it and summons be served upon defendants Secure Patient Delivery, LLC, Secure

Patient Delivery Shuttle, LLC, and Rotem Dahan; and, after due proceedings are had, that

judgment be entered in favor of plaintiff and against defendant:

1. Under each applicable law and cause of action, the entry of a declaratory judgment in favor of Ms. Majorie and against SPD, SPD Shuttle, and Rotem Dahan declaring that the practices complained of in this complaint are unlawful under federal and state law and that defendants willfully violated the rights of Ms. Majorie as alleged and proven.

2. Under the FMLA, awarding Ms. Majorie all damages and equitable relief due against SPD, SPD Shuttle, and Rotem Dahan, including but not limited to back pay, front pay or reinstatement, actual monetary losses up to 12 weeks' worth of Ms. Majorie's salary, judicial interest, liquidated damages, and reasonable attorney's fees and costs.

3. Under Title VII, awarding Ms. Majorie all damages and equitable relief due against SPD and SPD Shuttle, including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

4. Under 42 U.S.C. § 1981, awarding Ms. Majorie all damages and equitable relief due against SPD, SPD Shuttle, and Rotem Dahan, including but not limited to back pay, reinstatement or front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs.

5. Under the LEDL, awarding Ms. Majorie all damages and equitable relief due against SPD and SPD Shuttle, including but not limited to back pay,

front pay or reinstatement, compensatory damages, and reasonable attorney's fees and costs.

6. Under the federal False Claims Act, awarding Ms. Majorie all damages and equitable relief due against SPD, SPD Shuttle, and Rotem Dahan, including but not limited to two-times back pay, interest on the back pay, reinstatement or front pay, compensatory damages, reasonable attorney's fees and costs, and any other relief necessary to make Ms. Majorie whole.

7. Under the Louisiana Medical Assistance Programs Integrity Law, awarding Ms. Majorie all damages and equitable relief due against SPD, SPD Shuttle, and Rotem Dahan, including but not limited to two-times back pay, interest on the back pay, reinstatement or front pay, compensatory damages, punitive damages, reasonable attorney's fees and costs, and any other relief necessary to make Ms. Majorie whole.

8. Under the Louisiana Wage Payment Act, awarding to Ms. Majorie all damages and equitable relief due against SPD and SPD Shuttle, including but not limited to payment of all her unpaid wages and compensation due at the time of her termination, plus 90 days' worth of penalty wages, and reasonable attorney's fees and costs.

9. Under each applicable law and cause of action, awarding all other legal or equitable relief to which plaintiff is due, including but not limited to an injunction against SPD, SPD Shuttle, and Rotem Dahan ordering them to admit, at a time, place, and manner reasonably calculated to reach the public, that Ms. Majorie did not commit the business theft or other misconduct as the defendants falsely accused her of doing.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Lacey Majorie*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**LACEY MAJORIE**

      **Plaintiff,**

    **v.**

**SECURE PATIENT DELIVERY, LLC,**
**SECURE PATIENT DELIVERY SHUTTLE,**
**LLC, and ROTEM DAHAN**

      **Defendants.**

**CIVIL ACTION NO. PENDING**

## DECLARATION OF LACEY MAJORIE

I, Lacey Majorie, am 38 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1.    I am the named plaintiff in the lawsuit *Lacey Majorie v. Secure Patient Delivery, LLC et al.*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2.    After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3.    I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.  Executed on ____12/12/2022____

DocuSigned by:

7AC33D622D8B466...

Lacey Majorie